**Slip. Op. 99 – 55**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  RICHARD W. GOLDBERG, JUDGE**

|  |  |
|---|---|
| FABIL MANUFACTURING CO.,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>THE UNITED STATES,<br><br>　　　　　　　Defendant, | Court No. 95-02-00174 |

[Plaintiff's motion for summary judgment is denied.  Defendant's cross-motion for summary judgment is granted.  Judgment entered for defendant.]

Dated: June 28, 1999

Irving A. Mandel; Thomas J. Kovarcik, of counsel, for plaintiff.

David W. Ogden, Acting Assistant Attorney General; Joseph I. Liebman, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice; Aimee Lee, Commercial Litigation Branch, Civil Division, United States Department of Justice; Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs Service (Chi S. Choy), of counsel, for defendant.

## OPINION

**GOLDBERG, Judge:** This case comes before the Court on cross-motions for summary judgment.  Plaintiff Fabil Manufacturing Co. ("Fabil") challenges defendant United States Customs Service's ("Customs") refusal to grant an allowance in the appraised value of certain imported jackets under 19 C.F.R. § 158.12. Specifically, Fabil asserts that because the merchandise contained latent defects at the time of importation, Customs should have granted Fabil an allowance in value and refund of duties pursuant to section 158.12.  Fabil claims the defective merchandise was a total loss and requests an allowance in value equal to the total duties paid on the imported merchandise.

Because Fabil cannot establish (1) that the imported merchandise is the same as the merchandise returned, or (2) the actual diminution in value due to the alleged defects, summary judgment is granted in favor of Customs.  The Court exercises jurisdiction in this matter under 28 U.S.C. § 1581(a) (1994).

## I.

## BACKGROUND

While in business, Fabil imported outerwear, including jackets for children.[1]  In 1987, Fabil entered negotiations with Murjani, Inc., a licensee of the Coca-Cola Company, for the manufacture and sale of outerwear jackets bearing the Coca-Cola logo.  The parties agreed that Fabil could produce and sell 300,000 jackets with the Coca-Cola logo.  According to Fabil, it then contacted a Korean manufacturing agent, Booyang, Ltd., to identify manufacturing sources.  See Aff. of Robert Hammer, Vice President of Fabil ("Hammer Aff."), ¶ 5.  Fabil claims it provided manufacturing specifications for the jackets to Booyang, including colors, styles, sizes, and, most importantly, that the jackets be machine washable.  Fabil also represents that Booyang provided samples from prospective manufacturers, which Fabil had tested by "the U.S. Testing Laboratories in New Jersey."  Hammer Aff. ¶ 6.1.  Fabil claims the laboratory tests showed that after the jackets were machine washed, the colors in the jackets -- including the Coco-Cola logos -- did not run.  In other words, Fabil claims

---

[1] Fabil ceased doing business in 1989.  See Pl.'s Mem. in Supp. of Mot. for Summ. J., at 7.

the sample jackets were "color fast."  Id.

Fabil then ordered 300,000 jackets from Hop Yick Garment Factory and Centripower Company Ltd., both doing business in Hong Kong, and from one supplier in Korea, Samdo Trading Co. Ltd.  See Hammer Aff. ¶ 7.  Fabil entered the merchandise between June and September, 1987.  Fabil claims the total entered value of the merchandise was $1,706,970.[2]  See id. at ¶ 9.  Once entered, Fabil sold the jackets to department stores, including Dayton Hudson, Dillard's, and Bullocks.  But, Fabil asserts that customers returned the jackets because they were latently defective.  Specifically, Fabil claims the jackets and the Coco-Cola logos were not colorfast because, when washed, the jackets' logos disintegrated and the colors therein ran together.  See id. Ex. D.

In May, 1988, Fabil filed its first claims with Customs, alleging that because the merchandise was defective, it was due an allowance in duties paid.  Customs denied Fabil's protests in 1994.  Fabil then filed a timely appeal to this

---

[2] Customs claims that the total F.O.B. value of the entered merchandise was approximately $1,900,000.  See Def.'s Resp. to Pl.'s Statement of Undisputed Facts Pursuant to USCIT R. 56(i), ¶ 14.

court.  Fabil claims that because all 300,000 imported jackets were defective, it was forced to dispose of the merchandise at a total loss.  To account for the defective nature of the imported merchandise, Fabil seeks an allowance in value equal to the amount of total duties paid on all entries.

## II.
### STANDARD OF REVIEW

This case is before the Court on cross-motions for summary judgment.  The court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(d); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  Summary judgment is not appropriate, however, when a party presents "a dispute about a fact such that a reasonable trier of fact could return a verdict against the movant."  Ugg Int'l, Inc. v. United States, 17 CIT 79, 83, 813 F. Supp. 848, 852 (1993) (citation omitted).  And, a party opposing summary judgment must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to

interrogatories, and admissions to file', designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Caterett, 477 U.S. 317, 324 (1986) (citing Fed. R. Civ. P. 56(e)).

## III.
### DISCUSSION

Under 19 C.F.R. § 158.12, a protestant qualifies for an allowance in dutiable value where (1) imported goods are determined to be partially damaged at the time of importation, and (2) the allowance sought is commensurate to the diminution in value caused by the defect. Specifically, section 158.12 provides as follows:

> Merchandise partially damaged at time of importation. (A) *Allowance in value.* Merchandise which is subject to ad valorem or compound duties and found by the district director to be partially damaged <u>at the time of importation</u> shall be appraised in its condition as imported, <u>with an allowance made in the value to the extent of the damage</u>.

19 C.F.R. § 158.12 (emphasis added). To qualify for an allowance, a protestant must satisfy <u>both</u> elements of the above provision by clear and convincing evidence. See Samsung Elecs. America, Inc. v. United States, 23 CIT __, __, 35 F. Supp.2d 942, 946 (1999). The Court therefore reviews whether

Fabil's proffered evidence satisfies both elements of the allowance provision.

Upon review, the Court grants Customs' motion for summary judgment. As an initial matter, Fabil is able to establish that a genuine issue of material fact exists as to whether it actually ordered defect-free merchandise - a precondition for a section 158.12 claim. Beyond this, however, Fabil's claim fails because it is unable to establish an issue of material fact that would indicate it could satisfy either element of section 158.12. First, Fabil is unable to show that the imported merchandise for which it seeks an allowance is the same as that which was returned as defective. Fabil offers no evidence to suggest that it can link the allegedly defective merchandise to specific entries. Second, Fabil's claim fails because it offers no measure of precision upon which an appropriate allowance in value can be derived. Consequently, Fabil's motion for summary judgment fails, and defendant's cross-motion for summary judgment prevails.

**A.    A Material Issue of Fact Exists As To Whether Fabil Ordered Defect-Free Merchandise.**

Fabil claims it ordered colorfast jackets from three foreign suppliers.  Fabil maintains this fact is undisputed and points to the Hammer affidavit as support.  Customs denies Fabil's claim for lack of knowledge and argues that summary judgment should be granted in its favor because Fabil cannot establish that it ordered defect-free merchandise.

As a preliminary matter, Fabil must establish that it actually ordered colorfast jackets.  If Fabil cannot establish that it ordered colorfast jackets, the Court cannot determine whether the merchandise was actually defective and, consequently, whether an allowance is due Fabil.  This Court was presented with the same question of whether an importer actually contracted for defect-free merchandise in Samsung Electronics America, Inc. v. United States, 19 CIT 1307, 904 F. Supp. 1403 (1995).  There, the Court held the importer anticipated that some merchandise would be defective and, thus, ordered a mix of defect-free and defective merchandise.  See Samsung, at 1309, 904 F. Supp. at 1405.  The Federal Circuit reversed.  See Samsung Elecs. America, Inc. v. United States, __ Fed. Cir. (T) __, 106 F.3d 376 (1997) ("Samsung

II"). Specifically, the Federal Circuit found the sales
contracts included Servicing Agent Agreements, which implied that
the importer ordered defect-free merchandise and insured against
the inevitability of defects with the inclusion of the service
agreements.  Samsung II, at __, 106 F.3d at 379.  The Federal
Circuit also considered the existence of consumer warranties as
evidence that defect-free merchandise was ordered.  Id.  And, the
Federal Circuit noted that, given the close relationship between
the importer and its parent, the foreign supplier, "it [made] no
commercial sense for Samsung to purposefully deal in defective
goods."  Id.

Customs argues that, unlike Samsung, there is no sales
contract for the Court to interpret here.  Because there is no
contract, Customs maintains that Fabil has failed to establish
that it actually ordered defect-free merchandise.  Customs is
correct, in part: Fabil offers no evidence other than the Hammer
affidavit to support the assertion that it specifically
contracted for colorfast jackets.  Yet, an affidavit alone is
sufficient to defeat a motion for summary judgment if it
designates specific facts showing there exists a genuine issue
for trial.  See USCIT R. 56(d); see also Celotex, 477 U.S. at

324.  Here, the argument that Hammer's affidavit fails to designate facts specific enough to establish what Fabil actually contracted for, is not without merit.  Cf. Samsung II, at __, 106 F.3d at 381 (Mayer, C.J., dissenting) (concluding that plaintiff's "self-serving assertions [in an affidavit] add nothing to our understanding of the contract or to the parties' contemporaneous intentions").  Specifically, the Hammer affidavit does not indicate whether the contracts were oral or written, or whether the contracts even included manufacturing specifications.  But, for the reasons set forth below, the Court finds that the affidavit ultimately does raise a genuine issue of material fact as to whether Fabil actually ordered defect-free merchandise.

As noted above, the Hammer affidavit asserts that Fabil actually contracted for the purchase of colorsafe jackets.  See Hammer Aff. ¶ 10.  And, on summary judgment, the Court must view the evidence in the light most favorable to the non-moving party.  See Ugg Int'l, at 83, 813 F. Supp. at 852.  Within this framework, because the terms of the contract obviously could resolve what was actually ordered, the affidavit's simple assertion that Fabil contracted for color-

fast jackets is sufficient to create an issue of material fact. At trial, the parties could illicit testimony from the affiant, as well as the foreign suppliers, to clarify the terms of the contract, including what, if any, manufacturing specifications were included.

Importantly, the affidavit also successfully raises issues of fact other than the precise terms of the contract, that bear on whether Fabil ordered colorfast jackets.  For example, the affidavit suggests that Fabil's U.S. customers anticipated receiving colorfast jackets and, as support, notes that Fabil ordered machine-washable labels for the jackets.  See Hammer Aff. at ¶¶ 10, 12, and Ex. C.  While not entirely relevant to the terms of Fabil's contracts with the foreign suppliers, this specific assertion nevertheless informs whether Fabil actually ordered colorfast jackets.  That is, testimony from the affiant, the foreign suppliers, or even the U.S. customers, might help define the commercial realities of the sale, such as whether it would make economic sense to order machine-washable labels for jackets that were not in fact machine washable.  Therefore, when viewed in its entirety, the affidavit raises genuine issues of material fact

as to what Fabil actually ordered from the three foreign suppliers.  This analysis is consistent with the approach taken in <u>Samsung II</u>, where the Federal Circuit looked beyond the contract to ascertain if plaintiff ordered defect-free merchandise.  <u>See</u> <u>id.</u> at __, 106 F.3d at 379 (finding that consumer warranties and commercial reality, in addition to the terms of the contract, indicated plaintiff ordered defect-free merchandise).  Accordingly, Customs' motion for summary judgment is denied in this respect.

> **B.    Fabil Fails to Establish that the Imported <u>Merchandise Is the Same As the Merchandise Returned.</u>**

Fabil's allowance claim nonetheless fails because it cannot establish that the imported merchandise for which it seeks an allowance is the same as the merchandise it claims is defective. Specifically, Fabil offers no method to tie the allegedly defective merchandise to any entries or group of entries. Without this basic proof, the Court (and Customs) cannot determine whether contested merchandise actually contained a defect "at the time of importation."  19 C.F.R. § 158.12.  Thus, Fabil's allowance claim must fail.

Fabil claims that when its major U.S. customers

discovered the manufacturing defects in the jackets, they returned them to Fabil. See Pl.'s Br. in Supp. of Mot. for Summ. J., at 6. Fabil relies on the Hammer affidavit to support this general assertion. See Hammer Aff. ¶ 12; but see Letter from S. Ronay (Customs Consultant for Fabil) to Area Director of Customs, U.S. Customs Service, dated May 17, 1988 (stating only that "[m]uch of the merchandise was returned to the importer by its customers due to the fact that, after washings the color ran" (emphasis added)). At first blush, Hammer's general assertion that all merchandise was returned as defective alone might appear sufficient to survive summary judgment. Fabil, however, has indicated that because the company went out of business in 1989, it cannot provide additional records relevant to the transactions at issue in this case. See Pl.'s Reply Mem., at 5 ("[T]he absence of alternative proof is explained by the fact that Fabil is no longer in business."). Consequently, Fabil cannot provide concrete evidence that its U.S. customers actually returned jackets - much less all the jackets - because they were not colorfast. For example, Fabil fails to indicate that it could provide letters from customers, describing the merchandise

ordered and the merchandise returned.

Moreover, even if the Court were convinced that Fabil could prove that all jackets were returned because they were not colorfast, Fabil offers no evidence to suggest that it could tie the returns to a particular entry or group of entries. Indeed, Fabil does not even suggest, either in the affidavit or elsewhere, that it has internal records, which catalog the reasons for returns or the number of jackets actually returned. Nor does it suggest that it has internal records that might in some manner link the returned merchandise to the imported merchandise with any measure of reliability. Therefore, because plaintiff utterly fails to designate specific facts that indicate it might be able to prove (1) that all merchandise was returned, (2) that all returned merchandise was defective, and (3) that all returned merchandise was the same as the imported merchandise, the Court grants Customs' motion for summary judgment. To do otherwise would set a dangerous precedent, whereby importers might be able to claim an allowance in value for defective merchandise simply by asserting that merchandise was either returned or otherwise found to be defective and by pointing to

an entry that matches the merchandise's description.

**C.    Fabil Fails to Establish the Diminution in Value of <u>the Imported Merchandise.</u>**

Finally, Fabil's claim fails because the company cannot demonstrate with any precision what the claimed allowance in value should be for the defective merchandise.   In particular, Fabil states that it donated some of the merchandise to various charitable organizations, including the Salvation Army, Goodwill Industries, and the National Council of Jewish Women.  <u>See</u> Hammer Aff. ¶ 13.  Fabil asserts that it discarded the remainder of the merchandise without compensation, resulting in a total loss.  <u>See</u> <u>id.</u>

Fabil thus asserts that it donated some merchandise to charitable organizations, yet then claims the merchandise was a total loss.  Without more, the Court cannot determine if Fabil derived any value from its charitable contributions.  For instance, it is unclear whether Fabil subsequently took a deduction on its taxes for the contributions.  Fabil provides no receipts for its donations to these charitable organizations, nor does it offer any relevant tax returns.  And, in its affidavit, Fabil offers no indication that it has

any receipts or tax returns, much less that it could prove the actual loss with the specificity needed to sustain an allowance claim. Also, as noted earlier, Fabil has indicated that it has no additional records relevant to the transactions at issue. See Section III.B supra. Fabil thus fails to designate specific facts, either in the Hammer affidavit or elsewhere, to suggest that it is possible to calculate the actual loss.

Moreover, Fabil offers no evidence to suggest that any diminution in value due to the claimed defect could be tied to a specific entry or group of entries. Again, this is crucial evidence needed to sustain an allowance claim.

> If the Court were to accept otherwise, it runs the risk of illegally assigning to the protested entries value allowances for merchandise in non-protested entries and, in so doing, would contravene the rule from Alyeska Pipeline Serv. Co. v. United States, 10 CIT 510, 643 F. Supp. 1128 (1986), reh'g granted, 11 CIT 931 (1987), vacated as moot on other grounds, unpublished order (May 19, 1988). In Alyeska Pipeline, Customs had advanced the value of merchandise in a single entry to cover value advances (i.e., reappraisements) relating to twenty four additional entries of identical merchandise, including two of which were not before the court. The court rejected this action, finding that "[t]he law does not permit the Customs Service to assign one entry the values of merchandise in other entries or the duties owing to them." The court went on to conclude that "a value

adjustment to imported merchandise may be reflected
only on the entry or entries which cover the
imported merchandise.  It follows that the only
proper value increase for the entry in question
would be one reflecting the value of the
merchandise covered by that entry and no other
merchandise."  Similarly, it also follows here that
a value allowance must relate to the merchandise
entered under a specific entry(ies).

Samsung, at __, 35 F. Supp.2d at 949 (citations and footnote

omitted).  In sum, Fabil wholly fails to establish, or indicate

that it could establish, its proof of loss with any certainty or

reliability.  And, Fabil fails to link the diminution in value

due to defects in specific merchandise to any particular

entry(ies).  It is thus impossible to calculate an appropriate

allowance in value for the allegedly defective merchandise.

Accordingly, even if the Court were to accept that Fabil could

tie the allegedly defective merchandise to entries of imported

merchandise, the Court still would grant summary judgment to

defendant because Fabil cannot establish an appropriate

allowance.

**V.**

**<u>CONCLUSION</u>**

For the foregoing reasons, Customs' decision not to grant plaintiff an allowance for defective merchandise is sustained, and summary judgment is granted in favor of defendant.  Judgment will be entered accordingly.

_____

Richard W. Goldberg

JUDGE


Date:       June    , 1999
            New York, New York.

ERRATA


<u>Fabil Manufacturing Co. v. United States</u>, Court No. 95-02-00174,
Slip Op. 99-55, dated June 28, 1999

On p. 11, line 2, change "illicit" to "elicit"


July 1, 1999