FABIL MANUFACTURING CO.,
Plaintiff–Appellant,

v.

UNITED STATES, Defendant–Appellee.

No. 99–1566.

United States Court of Appeals,
Federal Circuit.

Jan. 23, 2001.

Thomas J. Kovarcik, of New York, NY, for plaintiff-appellant.

Aimee Lee, Attorney, Civil Division, Commercial Litigation Branch, Department of Justice, of New York, NY, for defendant-appellee. With her on the brief were David W. Ogden, Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, of Washington, DC; and Joseph I. Liebman, Attorney in Charge, International Trade Field Office, of New York, NY. Of counsel on the brief was Chi S. Choy, Attorney, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, of New York, NY.

Before RADER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and GAJARSA, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

The appellant Fabil Manufacturing Company (Fabil) filed this action in the Court of International Trade to recover the amounts it had paid as duties on imported merchandise which, it alleged, was latently defective and worthless. The court granted the government's motion for summary judgment because Fabil could not link the defects in the merchandise to particular entries covering the merchandise. We hold that in the circumstances of this case, Fabil was not required to make that showing. We therefore reverse the summary judgment and remand.

## I

Fabil's complaint in the Court of International Trade alleged that from June to September 1987 Fabil imported into the United States jackets bearing Coca–Cola logos, which Fabil had ordered to be machine washable, and paid for them; that after importation Fabil discovered that the jackets were "latently defective at the time of importation" because when washed the Coca–Cola logos "disintegrated and ruined the jackets"; that, as a result of the defect, purchasers of the jackets returned them to Fabil and the jackets "were unsaleable and completely worthless." Fabil sought "an allowance in dutiable value based on the defects." It filed this suit after Customs denied its protests "challenging Customs' refusal to grant an allowance in the value of the merchandise imported."

After the government answered, Fabil moved for summary judgment. Attached to the motion was the affidavit of Robert Hammer, Fabil's Vice–President, who said he had "personal knowledge of all facts set forth below." According to the affidavit, in 1987 Fabil had been authorized by a licensee of the Coca–Cola Company to manufacture 300,000 infants' and children's jackets with the Coca–Cola logo. Working through a Korean manufacturing agent, Fabil ordered 300,000 jackets from two Hong Kong companies and one Korean company. The manufacturing specifications "expressly included that the jackets be machine washable," which was "critical" for two stated reasons. Tests of the manufacturing samples submitted to Fabil showed that the product was colorfast. Based on those test results, Fabil ordered the jackets, for which, after importation, it paid the manufacturers by letter of credit the total FOB price of $1,706,970.

Following importation, Fabil "discovered" that the jackets were not machine washable because the Coca–Cola logos were not colorfast and after machine washing the logos disintegrated and their colors ran. When these "latent manufacturing defects ... became visible, the merchandise was returned to Fabil." The affidavit listed five department stores that "purchased and returned merchandise," which "returns established that the subject merchandise was never fit for sale." "Fabil was forced to dispose of the returned merchandise at a total loss." Some was donated to three specified charities and the "remainder of the returned merchandise was discarded without compensation."

As a result of "its losses resulting from the defective merchandise, Fabil was forced into insolvency and out of business." "All of the merchandise contained latent manufacturing defects that rendered it unfit for sale" and it "was completely worthless."

The government did not file any factual material in response to Hammer's affidavit. Instead, it cross-moved for summary judgment. The Court of International Trade denied Fabil's motion, granted the government's cross-motion and entered judgment for the government. *Fabil Mfg. Co. v. United States,* 56 F.Supp.2d 1183 (Ct. Int'l Trade 1999).

After quoting the regulation governing the reduction in dutiable value for defective imported goods (discussed in part II, below) and stating that a protestant must satisfy the requirements of that provision by "clear and convincing evidence," *id.* at

1185, the court held that there was a disputed issue of material fact whether Fabil had ordered defect free merchandise that precluded summary judgment on that question. *Id.* at 1186. The court then held, however, that Fabil had "[failed] to establish [1] that the imported merchandise is the same as the merchandise returned [and 2] the diminution in value of the imported merchandise." *Id.* at 1187–88.

It stated that Fabil "cannot establish that the imported merchandise for which it seeks an allowance is the same as the merchandise it claims is defective. Specifically, Fabil offers no method to tie the allegedly defective merchandise to any entries or group of entries. Without this basic proof, the Court (and Customs) cannot determine whether contested merchandise actually contained a defect 'at the time of importation,'" *id.* at 1187 (citation omitted), because it "offers no evidence to suggest that it could tie the returns to a particular entry or group of entries." *Id.* at 1188.

Moreover, Fabil "cannot demonstrate with any precision what the claimed allowance in value should be for the defective merchandise." *Id.* "Fabil offers no evidence to suggest that any diminution in value due to the claimed defect could be tied to a specific entry or group of entries. Again, this is crucial evidence needed to sustain an allowance claim." *Id.* The court also stated that Fabil "asserts that it donated some merchandise to charitable organizations, yet then claims the merchandise was a total loss. Without more, the Court cannot determine if Fabil derived any value from its charitable contributions. For instance, it is unclear whether Fabil subsequently took a deduction on its taxes for the contributions." *Id.*

## II

■ A. Authority to reduce the assessed valuation of defective imported merchandise is provided in 19 C.F.R. § 158.12, which states:

Allowance in value. Merchandise which is subject to ad valorem or compound duties and found by the port director to be partially damaged at the time of importation shall be appraised in its condition as imported, with an allowance made in the value to the extent of the damage.

As the Court of International Trade correctly noted, this regulation provides "for an allowance in dutiable value where (1) imported goods are determined to be partially damaged at the time of importation, and (2) the allowance sought is commensurate to the diminution in value caused by the defect." 56 F.Supp.2d at 1185. Nothing in the regulation, however, states, or even suggests, that to meet those standards the importer always must, in the words of the Court of International Trade, "tie the allegedly defective merchandise to any entries or group of entries," *id.* at 1187, by submitting detailed records relating to each particular entry and the defects in the imported merchandise the entry covered.

Hammer's affidavit, which the government did not refute and which we must credit for purposes of summary judgment, *McKay v. United States*, 199 F.3d 1376, 1380 (Fed.Cir.1999) (evidence must be viewed in non-moving party's favor), stated that all of the "subject merchandise" (which was identified as the 300,000 imported jackets) was latently defective and "worthless" at the time of importation. In these circumstances there was no need or occasion to determine which entries contained which defective merchandise. Under Fabil's submission, all the merchandise was defective and all of the entries covered that merchandise.

■ The Court of International Trade suggested that because Fabil might have taken a tax deduction for its donation of some of the defective goods to charitable organizations, its statement that it suffered a "total loss" on the merchandise was suspect. 56 F.Supp.2d at 1188. If in fact Fabil took such a deduction—and the

record does not show whether or not it did—that would affect only the amount of duty that Fabil could recover, not whether it was entitled to any recovery at all.

B. In requiring identification of the particular entries that covered the defective merchandise, the Court of International Trade relied on its decision in *Samsung Electronics America v. United States,* 35 F.Supp.2d 942 (Ct. Int'l Trade 1999). In this court, the government relies on *Samsung Electronics America v. United States,* 195 F.3d 1367 (Fed.Cir.1999), in which we affirmed that Court of International Trade's decision. Our *Samsung* decision, however, involved quite different facts, and the broad language in the opinion upon which the government relies cannot uncritically be extended and applied to the present case. *See N. States Power Co. v. United States,* 224 F.3d 1361, 1367 (Fed. Cir.2000).

In *Samsung,* an American company (Samsung) purchased electrical equipment from its Korean parent to sell in the United States. The products had various warranties, and the parent agreed to reimburse Samsung up to 5% of the total purchase price each year to cover Samsung's expenses in inspecting, repairing and refurbishing the products with latent defects. During the period covered by the sales contracts between the companies, Samsung either sold the defective products at a discount or repaired them. The parent reimbursed Samsung for the contract periods for 4.7% of the total purchase price.

Samsung sought under 19 C.F.R. § 158.12 a refund of the duties covering the defective merchandise. In affirming the Court of International Trade's summary judgment for the government, because "Samsung failed to establish with the legally required specificity the value of the defects in each entry so as to entitle it to an allowance and refund of duties pursuant to reliquidation and reappraisal," *id.* at 1368, the court stated:

> We hold that under section 158.12, in order to qualify for an allowance in appraised values, the importer's proof must relate the allowance sought to each particular entry. Samsung's proofs did not even purport to do so, reflecting only annual repair costs, and not the diminution in value of individual entries. The repair costs and losses covered the same years as those in which the protested entries occurred, but were not limited to equipment entered in those years and could have included considerable costs for equipment imported in earlier, nonprotested entries. Thus, these costs were not proven to be related with adequate specificity to particular entries as required by section 158.12.

*Id.* at 1368–69.

The court "agree[s] with the Court of International Trade's decision, and interpret[s] 19 C.F.R. § 158.12 to require Samsung to prove that a specific entry contained defective merchandise and what the allowance in appraised value for each such entry should be.... We, therefore, hold that section 158.12 requires the value for defects or damage to be associated with the entry appraised, so any refund on duty paid can be determined based on the specific entry at issue. It is legally insufficient to prove the repair costs, for example, for 1988 in toto, without correlation to particular entries in 1988." *Id.* at 1371. The court reiterated: "Our interpretation of 19 C.F.R. § 158.12 requires the allowance sought to be specifically tied to the value of the damaged or defective merchandise as appraised on an entry-by-entry basis." *Id.* at 1372.

The court found Samsung's evidence deficient because it

> proves only that at least some of the merchandise Samsung imported between 1987 and 1990 contained latent defects upon importation. We further agree that Samsung has failed to establish which of the subject entries contained merchandise with latent defects at the time of importation and what their reduced value was. Samsung's proof establishes no more than that

some merchandise was defective. It does not clearly indicate which entries contained merchandise that was defective, or the value of the defects of a given entry.

*Id.* at 1371.

The court also noted, in rejecting Samsung's argument that its treatment of its expenses on an annual basis was proper because in accord with "generally accepted accounting principles":

> The majority of the warranties covered the equipment for between ninety days and one year, but at least one warranty covered a particular part for eight years. If an item covered under the eight year warranty was repaired in 1988, it could have been imported at any time from 1980 until 1988, but the only entries for which Samsung protested and for which it now requests allowances were entered between December 1987 and October 1990. Thus, it cannot be determined whether that repair cost should be reflected in the appraisal for an entry in 1988. Samsung must be able to prove that the allowance requested is connected with the specific entry for which it is sought.

*Id.* at 1372.

In *Samsung* it was necessary to "relate the allowance sought to each particular entry" because Samsung claimed only that some of the entries contained latently defective products, and without relating the defects to particular entries, it was impossible to determine precisely what duties Samsung had paid for which it was entitled to an allowance. Indeed, as the court there pointed out, the length of the warranties Samsung provided meant that some of the repairs might have been made on products imported before the period at issue.

In the present case, in contrast, Fabil contends that all the merchandise the entries covered—the entire 300,000 jackets— were latently defective. It alleges that these jackets were "completely worthless" and it was forced to dispose of them "at a total loss." It therefore seeks to recover the total duties assessed and paid on the merchandise.

In those circumstances, there appears to be no reason—and the government has provided none—why Fabil should be required, as the Court of International Trade ruled, "to tie the allegedly defective merchandise to any entries or group of entries [without which proof] the Court (and Customs) cannot determine whether contested merchandise actually contained a defect at the time of 'importation.'" 56 F.Supp.2d at 1187. As noted, the broad language in *Samsung* must be read in light of the issue in that case.

Here, as we have shown, Fabil has made a prima facie showing of its entitlement to a refund of all the duties it paid on all the defective merchandise—a showing, we repeat, that the government thus far has not attempted to rebut. In the language of Rule 56(c) of the Federal Rules of Civil Procedure, on the record before the Court of International Trade, the government's motion for summary judgment should have been denied because the government had not shown that it was "entitled to a judgment as a matter of law." Accordingly, we shall reverse the summary judgment and remand the case to that court for further proceedings. We cannot conclude, however, that at this stage of the proceedings we should direct summary judgment for Fabil, as it urges us to do. We intimate no views on the final outcome of this case.

■ C. Perhaps the rationale of the Court of International Trade's decision was that the only way Fabil could prove its case by clear and convincing evidence was to tie the defective merchandise to the particular entries. If that was the court's reasoning, it had two fatal flaws. First, as just explained, in the circumstances of this case Fabil was not required to show such a relationship. Second, the proper standard of proof was not clear and convincing evidence but preponderance of the evidence— a subject we now discuss.

As this court has recognized: "The 'preponderance of the evidence' formulation is the general burden assigned in civil cases for factual matters." *St. Paul Fire & Marine Ins. Co. v. United States*, 6 F.3d 763, 769 (Fed.Cir.1993). Congress may, and sometimes does, provide otherwise.

Congress has provided otherwise for review of certain Customs decisions in the Court of International Trade. Under 28 U.S.C. § 2639(a)(1), when a Customs decision is challenged after importation, the decision "is presumed to be correct" and the party challenging it has "[t]he burden of proving otherwise." The provision does not specify the measure of proof the challenger must provide.

Section 2639(b) deals with challenges in that court to Customs' decisions made prior to importation. It states that "[i]n any civil action described in section 1581(h) of this title, the person commencing the action shall have the burden of making the demonstration required by such section by clear and convincing evidence." 28 U.S.C. § 2639(b). Section 1581(h) authorizes the Court of International Trade to review "prior to the importation of the goods involved, [specified Customs actions], but only if the [plaintiff] demonstrates ... that he would be irreparably harmed unless given an opportunity to obtain judicial review prior to such importation." 28 U.S.C. § 1581(h).

In *St. Paul*, we declined "to import the clear and convincing standard from subsection 2639(b) to subsection (a)." 6 F.3d at 769. *St. Paul* involved the question whether Customs properly extended the time for liquidating certain entries, which depended on whether Customs had abused its discretion in so doing, *i.e.*, whether Customs had acted reasonably. 6 F.3d at 768. We held that in challenging the reasonableness of Customs' action the importer was required to carry its burden only by a preponderance of the evidence and not by clear and convincing evidence. We stated that

[b]ecause pre-importation challenges to Customs' rulings in essence seek injunc-

tive relief, Congress noted that "the party bringing the civil action must demonstrate by clear and convincing evidence that he would suffer irreparable harm if forced to obtain judicial review [following importation of the merchandise]." The statute and the legislative history thus indicate that Congress set a demonstrably greater burden on the making of pre-importation challenges to Customs' rulings than it did on post-importation challenges of Customs' rulings. Given that Congress explicitly imposed a high burden of persuasion on the importer when mounting a pre-importation challenge to a Customs ruling, and given that subsection (b) which contains the "clear and convincing" standard follows subsection (a) in the statute, we find no reason in the statute or its legislative history to import the clear and convincing standard from subsection 2639(b) to subsection 2639(a).

*Id.* at 768–69 (citations omitted).

We "conclude[d] that the higher 'clear and convincing' burden of persuasion is inappropriate for post-importation challenge of Customs' rulings and that section 2639(a)(1) requires St. Paul to overcome the presumption of correctness accorded Customs' decisions to extend by a preponderance of the evidence." *Id.* at 769.

█ *St. Paul* thus holds that, except for cases challenging Customs rulings before importation, the preponderance-of-the-evidence standard that generally applies in civil cases also covers suits in the Court of International Trade challenging post-importation Customs decisions. Indeed, in *St. Paul* the court pointed out that that was the standard of proof it had applied "in a challenge to a Customs classification. *See Nissho Iwai Am. Corp. v. United States*, 842 F.2d 320, 321 (Fed.Cir.1988) (affirming Court of International Trade's judgment that plaintiff failed to prove insignia only incidentally decorative by a preponderance of the credible evidence). This court has also found 'preponderance of the evidence' to be the appropriate bur-

den of persuasion in determining the bona fides of a buying commission when reviewing the imposition of an antidumping duty order by the Department of Commerce. *LMI–La Metalli Industriale, S.p.A. v. United States,* 912 F.2d 455, 459 (Fed.Cir. 1990)." 6 F.3d at 769. *See also Libas, Ltd. v. United States,* 193 F.3d 1361, 1365 (Fed.Cir.1999) (A Customs' classification decision's presumption of correctness "may be rebutted if the importer demonstrates by a preponderance of the evidence that the Customs' classification is incorrect."); *Ford Motor Co. v. United States,* 157 F.3d 849, 855 (Fed.Cir.1998) (Importer has to prove by preponderance of the evidence that a Customs' decision to extend time for liquidation of entry of merchandise was unreasonable).

Neither the Court of International Trade nor the government has provided any convincing reason why the more stringent clear and convincing standard should be applied in a case seeking a refund of assessed duties because the imported merchandise was defective and therefore worth less than the assessed value. There is no claim here that "particularly important individual interests or rights are at stake"—a situation in which the Supreme Court has "required proof by clear and convincing evidence.... By contrast, imposition of even severe civil sanctions that do not implicate such interests has been permitted after proof by preponderance of the evidence." *Herman & MacLean v. Huddleston,* 459 U.S. 375, 389, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). In *Herman,* the Court held that preponderance of the evidence is the proper standard in a civil suit under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), alleging securities fraud. There is no reason to impose in this case "a requirement that cannot be found in the statute," *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 491, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), of proof by clear and convincing evidence of a claim for refund of duties paid on allegedly defective imported merchandise.

The government contends, however, that a Customs decision, dealing with a closely related issue that adopted the clear and convincing standard of proof, constituted the agency's interpretation of its own regulation that is entitled to deference. In a Customs decision in which an importer sought relief from assessed duties under section 520(c)(1) of the amended Tariff Act of 1930, 19 U.S.C. § 1520, on the ground that the imported merchandise was not of first quality, so that the duty assessed reflected a mistake in fact, Customs concluded:

> the importer must provide the concerned Customs officer with clear and convincing evidence to support a claim that merchandise purchased and appraised as one quality was in fact of a lesser quality, thus warranting an allowance in duties.

Customs Service Decision 84–11, 18 Cust. B. & Dec. 849, 852 (1983); *see also* HQ 546354 (July 19, 1996), http://www.customs.ustreas.gov/impoexpo/impoexpo.htm; HQ 544986 (Feb. 28, 1994), 1994 WL 271612 (Customs); HQ 545231 (Nov. 5, 1993), 1993 WL 614430 (Customs).

That ruling was rendered before our decision in *St. Paul.* It did not involve § 2639. It related only to the importer's burden of proof in the administrative proceeding before Customs, not to its burden before the Court of International Trade in a judicial challenge to Customs' ruling. Customs cannot establish the burden of proof in judicial proceedings; that task is for the judiciary or the Congress. *Cf. Adams Fruit Co. v. Barrett,* 494 U.S. 638, 649, 110 S.Ct. 1384, 108 L.Ed.2d 585 (1990). Finally, since the Customs ruling is not in accord with indeed, is contrary to—the governing statute (§ 2639) as interpreted in *St. Paul,* the ruling is not entitled to deference. *See Rollerblade, Inc. v. United States,* 112 F.3d 481, 484 (Fed.Cir.1997) (a Customs' classification decision was not entitled to deference where Customs' interpretation of a statute was inconsistent with precedent).

## CONCLUSION

The summary judgment of the Court of International Trade for the United States is reversed, and the case is remanded to that court for further proceedings consistent with this opinion.

*REVERSED AND REMANDED.*