**Slip Op. 03-82**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: HON. RICHARD W. GOLDBERG, SENIOR JUDGE**

| | |
|---|---|
| SAAB CARS USA, INC., <br><br>              Plaintiff, <br><br>        v. <br><br> UNITED STATES, <br><br>              Defendant. | **PUBLIC VERSION** <br><br> Court No. 00-00041 |

[Plaintiff's motion for summary judgment is denied, and Defendant's motion for summary judgment is denied.]

Date: July 14, 2003

Gibson, Dunn & Crutcher LLP (Judith A. Lee and Brian J. Rohal) for plaintiff Saab Cars USA, Inc.

Peter D. Keisler, Assistant Attorney General; John J. Mahon, Acting Attorney in Charge; and Barbara S. Williams, Civil Division, Commercial Litigation Branch, United States Department of Justice; Paula Smith, Office of Assistant Chief Counsel, International Trade Litigation, United States Bureau of Customs and Border Protection, Of Counsel, for defendant United States.

**OPINION**

**GOLDBERG, Senior Judge:** Saab Cars USA, Inc. ("SCUSA") imports into the United States automobiles from Swedish manufacturer Saab Automobile AB ("Saab Auto"). SCUSA protested the United States Customs Service's[1] ("Customs") liquidation of several entries of

---

[1] The United States Customs Service has since become the Bureau of Customs and Border Protection per the Homeland Security Act of 2002, § 1502, Pub. L. No. 107-296, 116 Stat. 2135, 2308-09 (Nov. 25, 2002), and the Reorganization Plan Modification for the Department of Homeland Security, H.R. Doc. 108-32, p. 4 (Feb. 4,

automobiles that were appraised at transaction value. In the protests, SCUSA argued that an allowance in value should be granted for defects present in the automobiles at importation. Customs denied SCUSA's protests.

SCUSA timely appealed Customs' denial of those protests to the Court of International Trade on January 20, 2000. On March 6, 2001, SCUSA filed a motion for summary judgment requesting a partial refund of duties for the defective automobiles. Customs filed a cross-motion for summary judgment on June 4, 2001, requesting that the Court dismiss this action. For the reasons that follow, both parties' motions for summary judgment are denied.

## I.   BACKGROUND

SCUSA imports into the United States automobiles manufactured by Saab Auto. The automobiles purchased by SCUSA from Saab Auto are subject to a warranty agreement (the "Warranty"). The terms of the Warranty are contained in the Warranty Policy and Procedures Manual dated January 11, 1995, and updated by warranty policy letters. According to SCUSA, the terms of the Warranty reimbursed SCUSA for the following specific repair expenses: (1) "pre-warranty," which covers [

], but does not include damage from [

2003).

]; (2) new car warranty, covering the car when it [

]; (3) emission warranty, when [

];
(4) perforation warranty, which covers [

]; and (5) the importer's own
extended warranty.  <u>Warranty Manual</u>, Plaintiff's Exhibit 1
(Confidential), ¶ 4.2.1.

To claim reimbursement from Saab Auto under the terms of the
Warranty, the retailer must submit the repairs to SCUSA's AS-400
Warranty System.  The AS-400 Warranty System is a database system
designed for SCUSA to track the automobile repairs which
correspond to each Vehicle Identification Number ("VIN").  The
AS-400 Warranty System also runs a series of "edits" to confirm
that the repair was subject to the Warranty.  In addition, Saab
Auto requires SCUSA (along with other importers) to audit
dealers' warranty repair claims to [

]

At issue in this case are entries of automobiles SCUSA
imported from Saab Auto between June of 1996 and July of 1997.
At the time of importation, SCUSA declared the transaction value
of the automobiles to be the price it paid Saab Auto for defect-
free automobiles.  While the vehicles were still at the port,
SCUSA claims it identified defects in certain automobiles.  The

defects were repaired by SCUSA.  The costs associated with the repairs are "port repair expenses" and are documented either through the AS-400 Warranty System or through invoices sent to SCUSA.  The total port repair expenses claimed by SCUSA are [          ].

Prior to expiration of the Warranty period, but after the vehicles were shipped from the port, additional defects were discovered in the vehicles.  To restore the vehicles to defect-free condition the dealers repaired the vehicles.  The costs associated with those repairs represent SCUSA's "warranty expenses."  The total warranty expenses claimed by SCUSA at the outset of this litigation was [            ].

Customs liquidated the entries, appraising the vehicles at their transaction values.  SCUSA protested the liquidations, requesting allowances under 19 C.F.R. § 158.12 for "damage [or] latent manufacturing defects."  The following protests were filed by SCUSA to request the allowances: (1) protest number 0502-98-100033, filed on June 30, 1998; (2) protest number 0502-98-100041, filed on September 14, 1998; (3) protest number 0502-99-100003, filed on January 12, 1999; and (4) protest number 0502-99-100008, filed on March 26, 1999.  The protests correspond to the following entry numbers:

| PROTEST NUMBER | ENTRY NUMBER (112- |
|---|---|
| 0502-98-100033 | 9896032-6*, 9903676-1*, 9850980-0*, 9873165-1*, 9876403-3*, 9885094-9*, 9906444-1*, 9915803-7*, 9888725-5*, 9891683-1*, 9910140-9*, 9978449-3, 9011040-0, 9995282-7 |
| 0502-98-100041 | 9805210-8*, 9814363-4*, 9818038-8*, 9822519-1*, 9826593-2*, 9970288-3*, 9978449-3, 9801057-7*, 9964040-6*, 9964123-0*, 9940682-4*, 9022943-2, 9026932-1, 9974345-7, 9929365-1, 9930525-7, 9933194-3, 9958484-4, 9968124-4, 9983272-2, 9986698-5, 9006647-9, 9016015-7, 9018813-3, 9030595-0, 9943632-6, 9947519-1, 9950291-1 |
| 0502-99-100003 | 9016015-7, 9018813-3 |
| 0502-99-100008 | 9936275-3 |
| * SCUSA and Customs have now agreed that the Court does not possess jurisdiction over these entries because they were not timely protested. | |

SCUSA penned the following in each of its protests:

We protest the appraised value of automobiles contained in the entries set forth in Attachment A.

The automobiles listed in these entries were purchased by [SCUSA] from Saab Automobile AB. SCUSA ordered perfect merchandise from Saab Automobile AB. Despite this order, some of the vehicles delivered contained latent manufacturing defects at the time of importation. Section 158.12 of the Customs Regulations, 19 C.F.R. 158.12, provides that 'merchandise which is subject to ad valorum or compound duties and found by the port director to be partially damaged at the time of importation shall be appraised in its condition as imported, with an allowance made in the value to the extent of the damage.' *See Samsung Electronics America, Inc. vs. United States*, 106 F.3d 376 (CAFC 1997).

Therefore, pursuant to 19 C.F.R. § 158.12, an allowance in the value of the imported vehicles set forth in the

protested entries should have been made to the [*sic*] reflect the extent of the defects.  We hereby request that the protested entries be reliquidated and that the vehicles set forth therein be appraised in the condition as imported.  In addition, we request that Customs delay its consideration of this protest until the Court of International Trade ("CIT") has issued its decision on remand in the *Samsung* case.  Based on instructions from the Court of Appeals, the anticipated CIT decision will clarify how the § 158.12 allowance will be implemented.[2]

SCUSA Protest, Nos. 0502-98-100033 (June 30, 1998), 0502-98-100041 (Sept. 14, 1998), 0502-99-100003 (Jan. 12, 1999), 0502-00-100008 (March 26, 1999).  These protests were denied by Customs on August 9, 1999, citing "no evidence of damage at time of import" as the only reason for denial.

SCUSA filed a timely summons before the Court on January 20, 2000, and filed the complaint on August 11, 2000.  SCUSA has submitted to the Court the VINs and corresponding repair descriptions for all of the entries protested.  The Court, upon cursory review of the repair descriptions submitted as evidence by SCUSA, estimates there are approximately 108,000 port and

---

[2]  Customs contends that SCUSA's protest was not valid because it did not meet the specificity requirements of 19 U.S.C. § 1514(c), see *infra* at 8-15.  Customs quoted only the last paragraph of SCUSA's three-paragraph protest in its initial brief, which is misleading when arguing that the language of the protest is insufficient.  Customs later contended that it only quoted the last paragraph because the first two were "merely introductory."  However, the Court has found that many of the specificity requirements were addressed in the first two paragraphs omitted by Customs.

Warranty repairs covered by the protests.  The Court has jurisdiction pursuant to 28 U.S.C. § 1581(a).

## II.  STANDARD OF REVIEW

This case is before the Court on SCUSA's motion for summary judgment and Customs' cross-motion for summary judgment.  The court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  USCIT R. 56(d).  A party opposing summary judgment must "go beyond the pleadings" and by his or her own affidavits, depositions, answers to interrogatories, and admissions to file, designate "specific facts showing that there is a genuine issue for trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  "While it is true that Customs' appraisal decisions are entitled to a statutory presumption of correctness, see 28 U.S.C. § 2639(a)(1), when a question of law is before the Court, the statutory presumption of correctness does not apply." Samsung Electronics America, Inc. v. United States, 23 CIT 2, 5, 35 F. Supp. 2d 942, 945-46 (1999) (citing Universal Elecs., Inc. v. United States, 112 F.3d 488, 492 (Fed. Cir. 1997)) (hereinafter "Samsung III").

### III.  DISCUSSION

#### A.   Jurisdictional Issues

The Court has "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930."  28 U.S.C. § 1581(a) (2000).  Therefore, a prerequisite to jurisdiction by the Court is the denial of a valid protest.  Washington Int'l Ins. Co. v. United States, 16 CIT 599, 601 (1992).  Based on the following analysis, the Court concludes that SCUSA filed a valid protest, and thus the Court has jurisdiction.

A protest is required to "set forth distinctly and specifically" the following information: (1) "each decision . . . as to which protest is made"; (2) "each category of merchandise affected by each decision . . ."; and (3) "the nature of each objection and the reasons therefor."  19 U.S.C. § 1514(c)(1) (2000).  The implementing regulations expand the requirements, specifying that the protest must include "[a] specific description of the merchandise affected by the decision as to which protest is made"; and "[t]he nature of, and justification for the objection set forth distinctly and specifically with respect to each category, payment, claim, decision, or refusal."  19 C.F.R. § 174.13(a) (2002).

In the seminal case <u>Davies v. Arthur</u>, 96 U.S. 148 (1877), the Supreme Court articulated the rationale for the specificity required of protests:

> Protests . . . must contain a distinct and clear specification of each substantive ground of objection to the payment of the duties. Technical precision is not required; but the objections must be so distinct and specific, as, when fairly construed, to show that the objection taken at the trial was at the time in the mind of the importer, and that it was sufficient to notify the collector of its true nature and character to the end that he might ascertain the precise facts, and have an opportunity to correct the mistake and cure the defect, if it was one which could be obviated.

<u>Davies v. Arthur</u>, 96 U.S. at 151.

Customs contends that the protests filed by SCUSA were not "distinct and specific," since SCUSA did not (a) tie specific repairs to specific entries and give the dollar amounts for the repairs; (b) state the amount of the allowance claimed; or (c) identify the claimed defects. Under Customs' reasoning, the protests' deficiencies undermined the rationale for requiring specificity, namely to notify Customs of the true nature of SCUSA's protests so that Customs could correct any defect. Customs argues that this case is similar to <u>Washington</u>, because the claimed deficiencies in the protests would "'eviscerate the protest requirements mandated by Congress and effectively require Customs to scrutinize the entire administrative record of every entry in order to divine potential objections and supporting arguments which an importer meant to advance.'" Memorandum in

Support of Defendant's Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment, 11 (June 4, 2001)(quoting <u>Washington</u>, 16 CIT 601, 604).

The Court concludes that Customs' argument is not persuasive. In <u>Washington</u>, the principal case upon which Customs relies, the court held that an importer's protest of a Customs' classification ruling was not valid because it did not counter with its own asserted classification. In that context, the Court found that the protests deficiencies required Customs to analyze the entire administrative record to determine every possible classification the importer could assert, and argue against each possibility.

The critical distinction between this case and <u>Washington</u> is that SCUSA is not challenging a classification. There is no alternative classification for SCUSA to propose. Ideally, in challenging a classification an importer would provide Customs with the alternative(s) so that Customs could analyze sample evidence to determine the classification for the entire shipment. In this case SCUSA has provided Customs with the regulation to apply: SCUSA protested the liquidation under 19 C.F.R. § 158.12, requesting an allowance for defective merchandise. Unlike the protest in <u>Washington</u>, Customs does not have to contemplate all of the statutory and regulatory provisions pertaining to liquidation to determine why SCUSA is protesting the liquidation.

Customs' real concern with SCUSA's protests is that the protests will require Customs to evaluate the evidence of each repair to determine if the repaired defect existed at the time of importation, admittedly a time-consuming task. But the task remains the same even if SCUSA listed all of the various defects in its protest. Customs would still have to analyze the evidence of repairs for every automobile, since the defects claimed are not uniform throughout the entries. Customs simply cannot avoid sifting through the entire evidentiary record in this type of claim.

Although SCUSA's protests are distinct and specific in the spirit of <u>Davies</u>, SCUSA's protests must contain the statutory and regulatory required elements for a valid protest. Because SCUSA has set forth in its protest all of the required elements, SCUSA has filed valid protests and the appeal from them is properly before the Court.

### *(1) SCUSA's protests identified the decision protested*

The regulations require the protestant to identify the decision "with respect to each category, payment, claim, decision, or refusal." 19 C.F.R. § 174.13(a). SCUSA identified each entry which it protested under § 158.12 and identified the decision as to which the protest was made, "the appraised value of automobiles contained in the entries set forth in Attachment A." Attachment A lists the entry numbers for entries of both

defective and non-defective vehicles. Customs contends that SCUSA was required to identify each defective vehicle, not simply identify entries that contained some defective vehicles. By including non-defective vehicles in the protests, Customs complains it is required to go through every entry and ascertain which vehicles were defective. The statute does not require that level of specificity in the protests, and as previously discussed, supra at 9-11, Customs cannot avoid sifting through each entry to evaluate the evidence of defects.

### *(2)   SCUSA identified the category of merchandise*

SCUSA identified the only category of the merchandise at issue, namely referring to "automobiles," and attaching the contested entries to the protest.

### *(3)   SCUSA identified the nature of each objection*

SCUSA set forth the nature of its objection and the reason therefor in the identical language of each of its protests:

> SCUSA ordered perfect merchandise from Saab Automobile AB. Despite this order, some of the vehicles delivered contained latent manufacturing defects at the time of importation. Section 158.12 of the Customs Regulations, 19 C.F.R. 158.12, provides that 'merchandise which is subject to ad valorum or compound duties and found by the port director to be partially damaged at the time of importation shall be appraised in its condition as imported, with an allowance made in the value to the extent of the damage.' *See Samsung Electronics America, Inc. vs. United States*, 106 F.3d 376 (CAFC 1997).
>
> Therefore, pursuant to 19 C.F.R. § 158.12, an allowance in the value of the imported vehicles set forth in the protested entries should have been made to the [*sic*]

reflect the extent of the defects.  We hereby request
that the protested entries be reliquidated and that the
vehicles set forth therein be appraised in the
condition as imported.  In addition, we request that
Customs delay its consideration of this protest until
the Court of International Trade ("CIT") has issued its
decision on remand in the *Samsung* case.  Based on
instructions from the Court of Appeals, the anticipated
CIT decision will clarify how the § 158.12 allowance
will be implemented.

SCUSA Protest (emphasis added).  The language of the protests and

Attachment A's do not reference the specific vehicles that were

defective or the types of latent defects, or tie the defects to

specific vehicles.  However, these are not fatal flaws in the

protests.  In Mattel v. United States, the court stated that the

"one cardinal rule in construing a protest is that it must show

fairly that the objection afterwards made at the trial was in the

mind of the party at the time the protest was made and was

brought to the knowledge of the collector to the end that he

might ascertain the precise facts and have an opportunity to

correct the mistake and cure the defect if it was one that could

be obviated."  72 Cust. Ct. 257, 260, 377 F. Supp. 955, 959

(1974)(citing Bliven v. United States, 1 Ct. Cust. 205, 207 (Ct.

Cust. App. 1911)).  Customs contends the absence of precise facts

makes the protests invalid.  As they stand, the protests clearly

notified Customs of the reason for the protests, latent defects

in the automobiles.  The protests should have then prompted

Customs to seek the precise factual evidence necessary to

evaluate the protests.  SCUSA's protests clearly contest the

appraised values of the entries because many of the vehicles allegedly contained latent defects, and clearly request an allowance commensurate with those defects under § 158.12.

There is one problem with SCUSA's protests that limits the Court's jurisdiction. It is clear that SCUSA had in mind at the time of protest defective automobiles that had already been repaired; however, SCUSA could not have had in mind defects to automobiles that had not been repaired before the protests were filed. Therefore, the Court does not have jurisdiction over the automobiles that were repaired after the date SCUSA filed its protests with Customs.[3] See Mattel, 72 Cust. Ct. at 260, 377 F. Supp. at 959 ("a protest . . . must show fairly that the objection afterwards made at the trial was in the mind of the party at the time the protest was made"). As a result, the Court does not have jurisdiction over vehicles repaired after June 30, 1998, that were in the entries covered by protest 0502-98-100033.

_____

[3] SCUSA styled its request for re-liquidation as § 1514 protests, most of which were filed within 90 days of liquidation, and therefore were protested timely. Section 158.12, which provides for a refund of duties if the goods were defective at the time of importation, has no time limit to request the refund. Because SCUSA filed its request as a protest, the Court does not opine at this time on whether SCUSA could have filed a request for reconsideration under § 1520 or directly under § 158.12, and then protest a denial of that request. See, e.g., HRL 547062, May 7, 1999 (In a section § 158.12 claim, Protestant first filed a claim under § 520(c) of the Tariff Act to seek a reduction in the appraised value because the goods were defective when imported. Protestant later filed a protest when the § 520(c) claim was rejected.).

The Court does not have jurisdiction over vehicles repaired after September 14, 1998, that were in the entries covered by protest 0502-98-100041. The Court does not have jurisdiction over vehicles repaired after January 12, 1999, that were in the entries covered by protest 0502-99-100003. Finally, the Court does not have jurisdiction over vehicles repaired after March 26, 1999, that were in the entries covered by protest 0502-99-100008.

Customs and SCUSA agree that twenty-one entries which SCUSA challenged in the initial complaint were not protested in a timely manner. Therefore, the Court dismisses for lack of jurisdiction entries 112-9805210-8, 112-9814363-4, 112-9818038-8, 112-9822519-1, 112-9826593-2, 112-9896032-6, 112-9903676-1, 112-9850980-0, 112-9873165-1, 112-9876403-3, 112-9885094-9, 112-9906444-1, 112-9915803-7, 112-9888725-5, 112-9891683-1, 112-9910140-9, 112-9970288-3, 112-9801057-7, 112-9964040-6, 112-9964123-0, and 112-9940682-4. The Court retains jurisdiction over vehicles repaired prior to their respective protest dates in the remaining 24 entries: 112-9978449-3, 112-9011040-0, 112-9995282-7, 112-9978449-3, 112-9022943-2, 112-9026932-1, 112-9974345-7, 112-9929365-1, 112-9930525-7, 112-9933194-3, 112-9958484-4, 112-9968124-4, 112-9983272-2, 112-9986698-5, 112-9006647-9, 112-9016015-7, 112-9018813-3, 112-9030595-0, 112-9943632-6, 112-9947519-1, 112-9950291-1, 112-9016015-7, 112-

9018813-3, and 112-9936275-3 (collectively, the "subject

entries").

> **B.    The Evidence Submitted by SCUSA**

19 C.F.R. § 158.12 allows an importer to claim an allowance

in value for merchandise partially damaged at the time of

importation.[4]  "A protestant qualifies for an allowance in

dutiable value where (1) imported goods are determined to be

partially damaged at the time of importation, and (2) the

allowance sought is commensurate to the diminuation in the value

of the merchandise caused by the defect."  <u>Samsung III</u>, 23 CIT at

6, 35 F. Supp. 2d at 946.  Customs opposes SCUSA's claims under §

158.12 because (A) § 158.12 does not cover damaged goods when the

damage was not discovered at importation; and (B) SCUSA has not

provided adequate evidence to overcome the presumption of

correctness afforded Customs' denial of SCUSA's protests.

> ### *(1)    Section 158.12 Covers Damage Undiscovered at Time of Importation*

Customs' first challenge to the substance of SCUSA's claim

under § 158.12 is that this section does not apply to latent

---

[4]  The relevant part of § 158.12 reads:
(a) *Allowance in value.*  Merchandise which is subject
to ad valorem or compound duties and found by the port
director to be partially damaged at the time of
importation shall be appraised in its condition as
imported, with an allowance made in the value to the
extent of the damage.  However, no allowance shall be
made when forbidden by law or regulation . . . .

19 C.F.R. § 158.12 (2002).

damage which was undiscovered at the time of importation. SCUSA, however, argues that the section applies to defects existing at the time of importation, even if those defects remain undiscovered until some time after entry.

The United States Code is silent on the interpretation of 19 C.F.R. § 158.12. In the face of Congress's silence, the Court will defer to Customs' interpretation of its own regulations. See Torrington Co. v. United States, 82 F.3d 1039, 1050 (Fed. Cir. 1996). The Court will give no deference to an interpretation advanced solely for litigation purposes. See Bowen v. Georgetown University Hospital, 488 U.S. 204 (1988) ("[W]e have declined to give deference to an agency counsel's interpretation of a statute where the agency itself has articulated no position on the question, . . ."); see also Chrysler Corp. v. United States, 24 CIT 75, 80 at n. 4; 87 F. Supp. 2d 1339, 1344 (2000) (the court refused to defer to Customs' interpretation of its regulation advanced solely for litigation purposes); RHP Bearings Ltd. v. United States, 23 CIT 967, 982 n. 10, 83 F. Supp. 2d 1322, 1336 (1999) (U.S. Department of Commerce's *post hoc* rationale for its determination, as set forth during litigation, is given no deference).

Customs cites no prior headquarters rulings or administrative actions that interpret the regulation to apply only to defects discovered at the time of importation. A review

of prior Customs rulings on this point reveals quite the opposite. See, e.g., Headquarters Ruling Letter ("HRL") 547060 (March 8, 2000) ("value adjustments can only be made where there is clear and convincing evidence to establish that the merchandise was defective at the time of importation") (emphasis added), HRL 546761 (Sept. 23, 1999) ("clear and convincing evidence to establish that the merchandise was defective at the time of importation") (emphasis added), HRL 227971 (June 29, 1999) (noted that the Samsung Electronics America, Inc. v. United States, 19 CIT 1307, 904 F. Supp. 1403 (1995) ("Samsung I"), Court found that "remoteness of time of discovery of defects goes to the weight of evidence," when defects were not discovered until customers made returns "quite some time" after importation), HRL 547042 (June 17, 1999) (defects discovered "after importation"), HRL 547062 (May 7, 1999) (protest under 19 C.F.R. § 158.12 granted when protest was filed more than one year after entry), HRL 543061 (May 24, 1983) ("defects discovered within the statutory protest period" is one factor to determining if an allowance should be given). Customs consistently emphasized that its concern was whether the defects existed at the time of importation, and not whether, at importation, the port director discovered the defects. It is quite clear that this anemic argument by Customs has been advanced purely for litigation, and as such, the Court will give no deference to

Customs' purported interpretation of 19 C.F.R. § 158.12.

Therefore, the Court turns to the language of the regulation to determine its meaning.

Section 158.12 reads, in part, "[m]erchandise . . . found by the port director to be partially damaged at the time of importation shall be appraised in its condition as imported...." 19 C.F.R. § 158.12. Customs emphasizes "found by the port director . . . at the time of importation," interpreting the regulatory language to mean that the port director had to find the damage at the time of importation in order for § 158.12 to apply to the subject entries. SCUSA emphasizes "partially damaged at the time of importation" to conclude that the regulatory language only requires that the damage claimed under § 158.12 existed at the time of importation. Under SCUSA's interpretation the port director did not need to find the damage at the time of importation.

The Court adopts SCUSA's interpretation of the language of § 158.12. If the intended result was to limit § 158.12 claims to damages discovered at the time of importation, the regulation could have easily been written to read "found by the port director <u>at the time of importation</u> to be partially damaged." That version of the regulation may have limited claims under § 158.12 to goods with damage ascertainable to the port director at

the time of importation.[5]  However, as the regulation now stands, the language limits claims under § 158.12 to goods partially damaged when imported, whenever that damage is discovered.  The regulatory language further supports the Court's interpretation because § 158.12 contains no time limit on claims under the section.  Further, the Statement of Administrative Action ("SAA") provides interpretative guidance, stating that "[w]here it is discovered subsequent to importation that the merchandise being appraised is defective, allowances will be made."  SAA, H.R. Doc. No. 153, Pt. II, 96th Cong., 1st Sess. (1979).  The language of the SAA points to discovery of the defect sometime after the merchandise is imported, arguably contradicting Customs' new assertion that the discovery must be made at the time of importation.  At minimum, the SAA certainly does not support a requirement that the port director discover the defect at importation.

It is also notable that the regulation's history in this Court, offered by Customs, does not contradict the Court's

---

[5]  Even Customs admits that in practice it has not read the regulation so strictly as to require the port director to have found the damage at the time of importation.  In a footnote, Customs acknowledges it has been lenient in allowing importers to claim allowances under § 158.12 when the port director could have found the defects at the time of importation, such as defects discovered shortly after importation.  See Memorandum in Support of Defendant's Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment, p. 19 n. 12.

interpretation of § 158.12. As Customs correctly points out, the series of <u>Samsung</u> cases does not directly address whether § 158.12 covers damage which was not discovered by the port director at the time of importation. <u>See</u> <u>Samsung I</u>; <u>Samsung Electronics America, Inc. v. United States</u>, 106 F.3d 376 (Fed. Cir. 1997) ("<u>Samsung II</u>"); <u>Samsung III</u>; <u>Samsung Electronics America, Inc. v. United States</u>, 195 F.3d 1367 (Fed. Cir. 1999) ("<u>Samsung IV</u>").

Customs final argument against SCUSA's interpretation of § 158.12 is that Congress intended to cover instances of partially defective goods, in which the defect was not discovered until later, in 19 U.S.C. § 1313(c). Section 1313(c) gives refunds of duties as drawback for latent manufacturing defects when the goods are destroyed or re-exported. Customs is mistaken that § 1313(c) was meant to cover the situation in the current case. Section 1313(c) does not apply when duty refunds are claimed for defective goods and the goods are not destroyed or re-exported. The plain language of § 1313(c) does not include under its purview all instances of defects discovered after importation, and thus does not preclude § 158.12 from applying in the present case. Therefore, § 158.12 applies to defects existing at the time of importation, whether or not the defects were discovered by the port director at the time of importation.

> *(2) SCUSA has shown that material issues of fact exist in its claim for an allowance under 19 C.F.R. § 158.12*

Customs requires the protestant to establish the elements of 19 C.F.R. § 158.12 by a preponderance of the evidence.  Fabil Mfg. Co. v. United States, 237 F.3d 1335, 1340-41 (Fed. Cir. 2001).  In Samsung III, the court set forth three requirements for an importer to successfully claim an allowance under 19 C.F.R. § 158.12.  First, the importer must show that it contracted for "defect-free" merchandise.  Samsung III, 23 CIT at 4-5, 35 F. Supp. 2d at 945.  Second, the importer must be able to link the defective merchandise to specific entries.  Samsung III, 23 CIT at 6, 35 F. Supp. 2d at 945-46 (citing Samsung II, 106 F.3d at 379, n.4).  Third, the importer must prove the amount of the allowance value for each entry.  Id.

Regarding the first requirement, SCUSA has easily shown that it contracted for "defect-free" merchandise.  Saab Auto, the manufacturer, provided service agreements for defects in the merchandise.  See Samsung II, 106 F.3d at 379 (agreements between manufacturer and importer that some merchandise will be defective merely acknowledges the commercial reality that some goods will be defective, and does not mean that the importer contracted for defective merchandise).  SCUSA also warranted to its customers that the goods were free of defects.  See id. (evidence that importer warranted to its customers that the goods were defect-free demonstrated that importer ordered defect-free merchandise).  And finally, SCUSA and Saab Auto have a close corporate

relationship, implying that Saab Auto would not sell SCUSA defective merchandise. See id. at 379 (the close corporate relationship between manufacturer and importer implies that the importer would not provide defective equipment to its consumers).

SCUSA has shown there are material issues of fact regarding the second factor. Samsung III required the importer to establish by a preponderance of the evidence which entries had defects at the time of importation. 23 CIT at 7-9, 35 F. Supp. 2d at 946-47. The importer in Samsung III did not provide sufficient evidence, offering only the consumer warranties and internal documents showing that claims for defects not existing at the time of importation were rejected. 23 CIT at 7-8, 35 F. Supp. 2d at 947-48. SCUSA provides the evidence the Court in Samsung III sought: descriptions of repairs to each vehicle, and connects each vehicle repaired to a specific entry through the VINs. See Samsung III, 23 CIT at 8, 35 F. Supp. 2d at 947 ("a claimant should provide specific descriptions of the damage or defect alleged and, in some manner, relate that defective merchandise to a particular entry"). What remains for trial is to develop the factual record to "independently confirm the validity" of the repair records in order to establish that the defects did indeed exist at the time of importation. Id. SCUSA will have the opportunity at trial to provide expert testimony that the described defects existed at the time of importation, or

show through the defect descriptions that "the damage is recognizable as a true manufacturing defect." Id., see E.I. Dupont de Nemours and Co. v. United States, 24 CIT 1301, 1302-04, 123 F. Supp. 2d 637, 639-41 (2000) (pursuant to 28 U.S.C. § 1581(a), the importer is permitted to present new evidence to develop the Court's record).

The third and final requirement for a successful claim under 19 C.F.R. § 158.12 is a showing by a preponderance of the evidence of the amount of the allowances for each entry of the defective vehicles. Samsung III, 23 CIT 9-11, 35 F. Supp. 2d at 948-50. SCUSA has detailed repair records that indicate the costs for each repair. Through the VINs, SCUSA can tie the repair costs to each entry. Trial is necessary to independently verify the amount of the allowances. Therefore, SCUSA has created a material issue of fact regarding the amount of the allowances, which will be resolved at trial.

#### IV. CONCLUSION

The Court does not have jurisdiction over several entries because the protests were untimely filed. Additionally, the Court lacks jurisdiction over claims for vehicle repairs that occurred after the vehicles' respective protest dates. However, the Court denies SCUSA's motion for summary judgment and denies Customs' cross-motion for summary judgment. Factual questions remain regarding whether the defects existed at the time of

importation, and the amount of allowances tied to those defects. See Samsung II at 380, n.4 ("Samsung thus bears the burden of proving, for instance, that the costs to repair defects under consumer warranties were incurred to repair defects in existence at importation, and not, for instance, those caused by its own mishandling or by consumer misuse of the equipment."). The factual record to be developed at trial will include any new, relevant evidence produced by SCUSA to meet the burden of proof on its 19 C.F.R. § 158.12 claim.

_____

**Senior Judge Richard W. Goldberg**


**Date:      July 14, 2003**
            **New York, New York**