**Slip Op. 04-3**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: RICHARD W. GOLDBERG, SENIOR JUDGE**

| | |
|---|---|
| SAAB CARS USA, INC., | |
| Plaintiff, | |
| v. | **PUBLIC VERSION** |
| UNITED STATES, | Court No. 00-00041 |
| Defendant. | |

[Judgment in part for Plaintiff.]

Date: January 6, 2004

Gibson, Dunn & Crutcher LLP (Judith A. Lee and Brian J. Rohal) for Plaintiff Saab Cars USA, Inc.

Peter D. Keisler, Assistant Attorney General, and Barbara S. Williams, Acting Attorney in Charge, Civil Division, Commercial Litigation Branch, United States Department of Justice; Paula Smith, Office of Assistant Chief Counsel, International Trade Litigation, United States Bureau of Customs and Border Protection, Of Counsel, for Defendant United States.

**OPINION**

**GOLDBERG, Senior Judge:** Saab Cars USA, Inc. ("SCUSA") imports into the United States automobiles from Swedish manufacturer Saab Automobile AB ("Saab Auto"). SCUSA protested the United States Customs Service's[1] ("Customs") liquidation of several entries of

---

[1] The United States Customs Service has since become the Bureau of Customs and Border Protection per the Homeland Security Act of 2002, § 1502, Pub. L. No. 107-296, 116 Stat. 2135, 2308-09 (Nov. 25, 2002), and the Reorganization Plan Modification for the Department of Homeland Security, H.R. Doc. 108-32, p. 4 (Feb. 4, 2003).

automobiles that were appraised at transaction value. In the protests, SCUSA argued that an allowance in value should be granted for defects present in the automobiles at the time of importation. Customs denied SCUSA's protests.

SCUSA timely appealed Customs's denial of those protests to the Court of International Trade on January 20, 2000. On March 6, 2001, SCUSA filed a motion for summary judgment requesting a partial refund of duties for the defective automobiles. Customs filed a cross-motion for summary judgment on June 4, 2001, requesting that the Court dismiss this action. Both parties' motions for summary judgment were denied by the Court on July 14, 2003. In its opinion, the Court disposed of the repairs covered by some protests on jurisdictional grounds, holding that "the Court does not have jurisdiction over the automobiles that were repaired after the date SCUSA filed its protests with Customs." Saab Cars USA, Inc. v. United States, 27 CIT ___, Slip Op. 03-82 at 14 (July 14, 2003). With regard to the remaining repairs, the Court instructed SCUSA that "[w]hat remains for trial is to develop the factual record to 'independently confirm the validity' of the repair records in order to establish that the defects did indeed exist at the time of importation." Id. at 23 (citation omitted).

The parties agreed, in lieu of trial, to submit a factual stipulation to the Court due September 29, 2003. A hearing on

the matter was held on October 1, 2003, at which both parties presented their respective arguments before the Court.  For the following reasons, the Court holds that SCUSA is entitled to an allowance for its port repair expenses and rejects all other claims presented by SCUSA.

## I.  BACKGROUND

SCUSA imports into the United States automobiles manufactured by Saab Auto.  The automobiles purchased by SCUSA from Saab Auto are subject to a warranty agreement (the "Warranty").  The terms of the Warranty are contained in the Warranty Policy and Procedures Manual dated January 11, 1995, and updated by warranty policy letters.  According to SCUSA, the terms of the Warranty reimburse SCUSA for the following specific repair expenses: (1) pre-warranty, (2) new car warranty, (3) emission warranty, (4) perforation warranty, and (5) the importer's own extended warranty.  Warranty Manual, Pl.'s Ex. 1 (Confidential) ¶ 4.2.1.

To claim reimbursement from Saab Auto under the terms of the Warranty, the retailer must submit the repairs to SCUSA's AS-400 Warranty System.  The AS-400 Warranty System is a database system designed for SCUSA to track the automobile repairs which correspond to each Vehicle Identification Number ("VIN").  The AS-400 Warranty System also runs a series of "edits" to confirm that the repair was subject to the Warranty.  In addition, Saab

Auto requires SCUSA (along with other importers) to audit dealers' warranty repair claims. Id. ¶ 5.4.6.

At issue in this case are entries of automobiles SCUSA imported from Saab Auto between June of 1996 and July of 1997.[2] At the time of importation, SCUSA declared the transaction value of the automobiles to be the price it paid Saab Auto for defect-free automobiles.

While the vehicles were still at the port of importation, SCUSA claims it identified defects in certain automobiles. Pl.'s Mot. Summ. J. at 13. These defects were repaired by SCUSA at the port. Id. at 13-14. The costs associated with these repairs are termed "port repair expenses" and are documented either through the AS-400 Warranty System or through invoices sent to SCUSA. Id. at 14. For each repair performed, the computer printout lists the protest number, the entry number, the VIN, the dealer,

---

[2] SCUSA protested Customs's liquidation of the following entry numbers: 112-9896032-6*, 112-9903676-1*, 112-9850980-0*, 112-9873165-1*, 112-9876403-3*, 112-9885094-9*, 112-9906444-1*, 112-9915803-7*, 112-9888725-5*, 112-9891683-1*, 112-9910140-9*, 112-9978449-3, 112-9011040-0, 112-9995282-7, 112-9805210-8*, 112-9814363-4*, 112-9818038-8*, 112-9822519-1*, 112-9826593-2*, 112-9970288-3*, 112-9978449-3, 112-9801057-7*, 112-9964040-6*, 112-9964123-0*, 112-9940682-4*, 112-9022943-2, 112-9026932-1, 112-9974345-7, 112-9929365-1, 112-9930525-7, 112-9933194-3, 112-9958484-4, 112-9968124-4, 112-9983272-2, 112-9986698-5, 112-9006647-9, 112-9016015-7, 112-9018813-3, 112-9030595-0, 112-9943632-6, 112-9947519-1, 112-9950291-1, 112-9016015-7, 112-9018813-3, and 112-9936275-3. Those entries denoted with an asterisk (*) represent entries over which SCUSA and Customs have agreed that the Court does not possess jurisdiction because they were not timely protested.

the claim number, the repair date, the object code, a brief
description of the repair,[3] and the total paid for the repair.
Pl.'s Ex. 15 (Confidential).  The port repair expenses claimed by
SCUSA total $[          ].[4]

Prior to expiration of the Warranty period, but after the
vehicles were shipped from the port, additional defects were
discovered in the vehicles.  Pl.'s Mot. Summ. J. at 14.  To
restore the vehicles to defect-free condition, the dealers
repaired the vehicles.  Id.  The costs associated with these
repairs represent SCUSA's "warranty expenses."  Id.  As with the
port repair expenses, SCUSA has a computer printout that lists
the protest number, the entry number, the VIN, the dealer, the
claim number, the repair date, the object code, a brief
description of the repair, and the total paid for each repair

---

[3]  E.g., "battery" or "sun visors" or "gear shift lever
bearing assembly."

[4]  In both its Motion for Summary Judgment and its Factual
Stipulation in Lieu of Trial, SCUSA claimed that its port repair
expenses total $[          ].  In its Cross-Motion for Summary
Judgment, Customs noted that two of the port repair descriptions
state [                              ], and questioned whether
these two vehicles were actually damaged by [    ] prior to
importation.  SCUSA subsequently acknowledged that the [

                                                            ].
Accordingly, at the conclusion of the hearing, the Court
instructed SCUSA to subtract the cost of these repairs to [
      ] vehicles from the amount of the allowance it seeks for
its port repair expenses.  In addition, the Court further
instructed SCUSA to subtract the cost of repairs to vehicles over
which the Court deemed it lacks jurisdiction in its Order dated
July 14, 2003.  SCUSA's recalculated figure is $[          ].

that constitutes a warranty expense. Pl.'s Ex. 16 (Confidential). The warranty expenses claimed by SCUSA total $[ ].[5]

In addition to the computer printouts provided by SCUSA in Exhibits 15 and 16, SCUSA also included with its Motion for Summary Judgment five sample computer claim forms submitted by dealers to SCUSA using the AS-400 Warranty System.[6] Pl.'s Ex. 21 (Confidential). These computer claim forms are considerably more detailed than the printouts contained in Exhibits 15 and 16. The pertinent portions of the computer claim forms list the claim number; the VIN; the model; the "in service date"; the repair date; the mileage on the vehicle at the time of the repair; whether the repair was the result of a recall; a breakdown of the repair costs for parts and labor; and a more detailed description of the customer's complaint, the type of defect, and the repair(s) performed. Id. SCUSA failed to provide computer claim forms for every repair at issue "because of the prohibitive cost

---

[5] In both its Motion for Summary Judgment and its Factual Stipulation in Lieu of Trial, SCUSA claimed that its warranty expenses total $[ ]. However, as with the port repair expenses, at the close of the hearing the Court ordered SCUSA to subtract from its warranty expenses the cost of repairs to vehicles over which the Court deemed it lacks jurisdiction in its Order dated July 14, 2003. SCUSA's recalculated figure is $[ ].

[6] The parties referred to these computer claim forms as "backup repair orders" or "backup documentation" during the hearing. Oral Argument Tr. at 9, 52.

of producing all of the records." Pl.'s Reply at 19 n.10.
Instead, SCUSA simply submitted computer printouts of all
warranty and port repair expenses.

Customs liquidated the entries, appraising the vehicles at
their transaction values. SCUSA protested the liquidations,
requesting allowances under 19 C.F.R. § 158.12 for "damage [or]
latent manufacturing defects." These protests were denied by
Customs on August 9, 1999. On January 20, 2000, SCUSA filed a
timely summons before the Court, and it filed its complaint on
August 11, 2000. The parties subsequently filed motions for
summary judgment, and the Court denied both parties' motions on
July 14, 2003.

In its Opinion, the Court ruled that although SCUSA's
protests were valid and jurisdiction was therefore proper under
28 U.S.C. § 1581(a), the Court nonetheless lacked jurisdiction
over two groups of entries: those which Customs and SCUSA agreed
were not protested in a timely manner,[7] and those encompassing
automobiles whose defects had not been repaired before the

---

[7] Customs and SCUSA agreed that entries 112-9805210-8, 112-9814363-4, 112-9818038-8, 112-9822519-1, 112-9826593-2, 112-9896032-6, 112-9903676-1, 112-9850980-0, 112-9873165-1, 112-9876403-3, 112-9885094-9, 112-9906444-1, 112-9915803-7, 112-9888725-5, 112-9891683-1, 112-9910140-9, 112-9970288-3, 112-9801057-7, 112-9964040-6, 112-9964123-0, and 112-9940682-4 were not timely protested.

protests were filed.[8]  Next, after determining that 19 C.F.R. §
158.12 does apply to defects existing at the time of importation,
regardless of whether or not those defects were discovered by the
port director at the time of importation, the Court delved into
the three requirements for an importer successfully to claim an
allowance under section 158.12, as set forth in Samsung
Electronics America, Inc. v. United States, 23 CIT 2, 35 F. Supp.
2d 942 (1999), aff'd, 195 F.3d 1367 (Fed. Cir. 1999).  The Court
found that SCUSA had easily satisfied the first requirement of
showing that it contracted for "defect-free" merchandise.  Saab
Cars USA, Inc. v. United States, 27 CIT ___, Slip Op. 03-82 at 22
(July 14, 2003).  With regard to the second and third
requirements, the Court held that SCUSA had shown material issues
of fact as to both, which needed to be resolved at trial.
According to the Court, "[w]hat remains for trial is to develop
the factual record to 'independently confirm the validity' of the
repair records in order to establish that the defects did indeed
exist at the time of importation."  Id. at 23 (citation omitted).
Likewise, "[t]rial is necessary to independently verify the
amount of the allowances."  Id. at 24.

---

    [8]  This category includes vehicles repaired after June 30,
1998 that were in the entries covered by protest 0502-98-100033,
vehicles repaired after September 14, 1998 that were in the
entries covered by protest 0502-98-100041, vehicles repaired
after January 12, 1999 that were in the entries covered by
protest 0502-99-100003, and vehicles repaired after March 26,
1999 that were in the entries covered by protest 0502-99-100008.

In lieu of trial, the parties opted to submit an agreed stipulation of facts to the Court.  On September 29, 2003, SCUSA submitted its Factual Stipulation in Lieu of Trial, along with affidavits from its expert witnesses, and Customs provided a declaration from its expert witness.  The Court held a hearing on the matter on October 1, 2003.  Because the Court previously concluded that SCUSA filed valid protests, jurisdiction is proper pursuant to 28 U.S.C. § 1581(a).  See id. at 8-16 (analyzing the validity of SCUSA's protests).

## II.  STANDARD OF REVIEW

Customs's appraisal decisions ordinarily are entitled to a statutory presumption of correctness.  28 U.S.C. § 2639(a)(1).  However, when a question of law is before the Court, the statutory presumption of correctness does not apply.  Samsung, 23 CIT at 5, 35 F. Supp. 2d at 945-46 (citing Universal Elecs., Inc. v. United States, 112 F.3d 488, 492 (Fed. Cir. 1997)).  Here, the only question before the Court is a question of law: What type of evidence is sufficient to satisfy Samsung's instruction that, to prevail on a section 158.12 claim, an importer must proffer "objective and verifiable evidence with some semblance of specificity"?  Id. at 8, 35 F. Supp. 2d at 947.  Since a question of law is at issue, the usual statutory presumption of correctness afforded Customs's appraisal decisions does not apply to this case.

### III.  DISCUSSION

19 C.F.R. § 158.12 allows an importer to claim an allowance in value for merchandise partially damaged at the time of importation.[9]  "[A] protestant qualifies for an allowance in dutiable value where (1) imported goods are determined to be partially damaged at the time of importation, and (2) the allowance sought is commensurate to the diminution in the value of the merchandise caused by the defect."  Id. at 6, 35 F. Supp. 2d at 946.  "[T]o prevail on a section 158.12 claim, . . . objective and verifiable evidence with some semblance of specificity must . . . be proffered.  Indeed, to make a section 158.12 claim, a claimant should provide specific descriptions of the damage or defect alleged and . . . relate that defective merchandise to a particular entry."  Id. at 8, 35 F. Supp. 2d at 947.  The importer must prove that it is entitled to an allowance under section 158.12 by a preponderance of the evidence.  Fabil Mfg. Co. v. United States, 237 F.3d 1335, 1339 (Fed. Cir. 2001).

---

[9]  The relevant portion of § 158.12 reads:

(a) *Allowance in value*.  Merchandise which is subject to ad valorem or compound duties and found by the port director to be partially damaged at the time of importation shall be appraised in its condition as imported, with an allowance made in the value to the extent of the damage.

19 C.F.R. § 158.12 (2003).

SCUSA asserts that the computer printouts comprising Exhibits 15 and 16 are sufficient to satisfy <u>Samsung</u>'s evidentiary requirement. Pl.'s Mot. Summ. J. at 23. Since the records list the VIN of each automobile that was repaired, SCUSA is able to relate each defective automobile to a particular entry. <u>Id.</u> In addition, the records contain a description of each repair that was performed, thereby satisfying <u>Samsung</u>'s instruction that "a claimant should provide specific descriptions of the damage or defect alleged[.]" Pl.'s Reply at 18 (quoting <u>Samsung</u>, 23 CIT at 8, 35 F. Supp. 2d at 947). Moreover, SCUSA argues that since the terms of the Warranty permit reimbursement only for defective automobiles, all Warranty repairs (which were audited by Saab Auto and SCUSA) were necessarily limited to expenses for defects existing in the automobiles at the time of importation. Pl.'s Mot. Summ. J. at 25. Finally, the records also trace the cost of each repair, meaning that SCUSA is able to prove the proper allowance value for each entry of defective merchandise. <u>Id.</u> at 26-27.

Customs contends that the records comprising Exhibits 15 and 16 simply are not sufficient under <u>Samsung</u>'s specificity requirement. Mem. Supp. Def.'s Cross-Mot. Summ. J. at 26, 29. This is because it is impossible to determine from the three- or four-word description of each defect found in the records whether it is a defect that existed at the time of importation. Mem.

Reply Pl.'s Opp'n at 17 n.7. Instead, for every single repair expense, Customs asserts that SCUSA should have produced a more detailed computer claim form, like those found in Exhibit 21. Mem. Supp. Def.'s Cross-Mot. Summ. J. at 28. The information contained in the computer claim form, such as the mileage on the defective vehicle at the time of the repair, the repair date, and a more detailed description of the nature of the defect, would help Customs to make a more specific determination as to whether the defect existed at the time of importation, or was the result of some other circumstance. Id.

In response, SCUSA explains that it failed to submit a computer claim form for every repair at issue because of the "prohibitive cost" of doing so. Pl.'s Reply at 19 n.10 (citing Buchbinder Decl. ¶ 2). SCUSA further claims that Samsung does not require the "extraordinary level of specificity" found in the computer claim forms. Id. at 19.

## A. SCUSA Is Not Entitled to an Allowance for its Warranty Expenses

In Samsung, the Court set forth three requirements for an importer to claim an allowance under 19 C.F.R. § 158.12. First, the importer must show that it contracted for "defect-free" merchandise. Samsung, 23 CIT at 4, 35 F. Supp. 2d at 945. The Court has already ruled that "SCUSA has easily shown that it contracted for 'defect-free' merchandise." Saab Cars USA, Inc. v. United States, 27 CIT ___, Slip Op. 03-82 at 22 (July 14,

2003).  Second, the importer must be able to link the defective merchandise to specific entries.  <u>Samsung</u>, 23 CIT at 4-7, 35 F. Supp. 2d at 945-46.  Third, the importer must prove the amount of the allowance value for each entry.  <u>Id.</u>

While the parties do not dispute that SCUSA can correlate each warranty expense with a VIN, which in turn can be linked to a particular entry, more is required of SCUSA.  Mem. Supp. Def.'s Cross-Mot. Summ. J. at 26.  "[O]bjective and verifiable evidence with some semblance of specificity must also be proffered. Indeed, to make a section 158.12 claim, a claimant should provide specific descriptions of the damage or defect alleged and, in some manner, relate that defective merchandise to a particular entry."  <u>Samsung</u>, 23 CIT at 8, 35 F. Supp. 2d at 947.  There is no doubt that SCUSA has "relate[d its] defective merchandise to . . . particular entr[ies]."  <u>Id.</u>  The problem, however, is that SCUSA has not described its defective merchandise with sufficient specificity.

SCUSA did nothing more than submit a computer printout of its warranty expenses.  Pl.'s Ex. 16 (Confidential).  This printout merely lists the name of each vehicle part or component that was allegedly defective; nothing in SCUSA's spreadsheet indicates how the component was defective, or what type of repair was performed.  <u>Id.</u>  Although SCUSA is able to retrieve considerably more detailed records (namely, the computer claim

forms), SCUSA did not offer such records into evidence because of the "prohibitive cost" of doing so.  Pl.'s Reply at 19 n.10 (citing Buchbinder Decl. ¶ 2).  However, the "prohibitive cost" of producing evidence is not a permissible justification for failing to produce evidence that is legally required to substantiate a party's claim.

The rationale underlying Samsung's instruction that a claimant must provide specific descriptions of the damage or defect alleged is simple:

> Such descriptions are necessary because both the Court and Customs must independently confirm the validity of an allowance claim.  And, descriptions . . . provide a reasonably objective basis upon which to assess such a claim.  For example, descriptions can be reviewed by the Court and by independent experts to confirm that the alleged damage existed at the time of importation . . . .

Samsung, 23 CIT at 8, 35 F. Supp. 2d at 947-48.  The problem with the defect descriptions provided by SCUSA in its spreadsheet is that they are not detailed enough for anyone to ascertain whether the alleged defects existed at the time of importation.

For instance, the defect description provided by SCUSA for claim number 9241252, VIN V7008291, is merely "upholstry" [sic].  Pl.'s Ex. 16, Vol. 3, at 7 (Confidential).  Although this is a

small item, it is representative of the utter lack of specificity that plagues SCUSA's entire spreadsheet. Simply put, it is impossible for the Court, Customs, an independent expert, or anyone else to determine from the one-word description "upholstery" whether the upholstery really was defective at the time of importation. Without a more detailed description, the Court can only speculate when and how the upholstery was damaged.

On the other hand, if SCUSA would have produced a computer claim form for the damaged upholstery, both the Court and Customs would have been in a better position to assess SCUSA's allowance claim. Based on the computer claim form, Customs and the Court would have learned the precise nature of the repairs made to the upholstery, how long the vehicle with the damaged upholstery had been in use, and even whether there was a recall for defective upholstery. See Pl.'s Ex. 21 (Confidential) (providing sample computer claim forms). Because the computer claim forms contain precisely the type of specific information that would enable Customs and the Court to make an informed decision regarding whether the damage existed at the time of importation, SCUSA should have provided a computer claim form for every warranty expense. The fact that to do so would be costly does not relieve SCUSA of its legal obligation to prove its entitlement to an allowance by a preponderance of the evidence. Fabil, 237 F.3d at 1339.

In sum, the computer printout submitted by SCUSA in Exhibit 16 is insufficiently specific to comply with well-established law.  Accordingly, the Court holds that SCUSA is not entitled to an allowance for its warranty expenses.[10]

There is one exception to the Court's holding, however. SCUSA produced ten computer claim forms in Exhibit A to its Reply to the Government's Opposition to Plaintiff's Motion for Summary Judgment and Response to the Government's Cross-Motion for Summary Judgment in an effort to substantiate ten different warranty expenses.[11]  Pl.'s Ex. A (Confidential); see also Pl.'s Reply at 19 n.10 (explaining why SCUSA provided the computer claim forms in Exhibit A).  Customs objects to three of these ten allowance claims on the grounds that the vehicles at issue had

---

[10]  Included with SCUSA's Factual Stipulation in Lieu of Trial is the Affidavit of Michael V. Schoenecker ("Schoenecker Affidavit"), one of SCUSA's expert witnesses, stating that he "examined sample warranty claims submitted by Saab," and opining that "these claims are consistent with repairs needed for manufacturing or design defects, as opposed to normal wear and tear damage."  Schoenecker Aff. ¶ 16.  The value of the Schoenecker Affidavit is questionable since Mr. Schoenecker did not review every allowance claim listed in Exhibit 16, but rather examined only "sample warranty claims."  Id.  However, even if Mr. Schoenecker had reviewed every single description of every single warranty expense at issue, that still would not have been enough, because the defect descriptions contained in Exhibit 16 simply do not satisfy Samsung's specificity requirement.

[11]  Two additional computer claim forms included in Exhibit A describe port repair expenses for repairs made to [       ] vehicles.  See claim numbers 7005551 and 7006361, Pl.'s Ex. A (Confidential).  Because these two computer claim forms involve port repair expenses instead of warranty expenses, they are not relevant to the Court's present inquiry.

high mileage and were in use for approximately two years.  Mem.
Reply Pl.'s Opp'n at 17-18.

The Court is unable to rule on one of Customs's objections
because it concerns a vehicle in entry 9850980-0 (an entry over
which the Court lacks jurisdiction).[12]  See claim number 9147373,
Pl.'s Ex. A (Confidential); Pl.'s Ex. 16, Vol. 1, at 109
(Confidential).  With regard to the remaining two warranty
expenses, the Court agrees with Customs that, due to the
vehicle's relatively high mileage and the nature of the damage at
issue,[13] SCUSA has not met its burden of establishing that it is
entitled to an allowance for these two warranty expenses.  See
claim numbers 9865101 and 9865102, Pl.'s Ex. A (Confidential).
In addition, the Court lacks jurisdiction over claim number
9402132 because it also concerns a vehicle in entry 9850980-0.
See claim number 9402132, Pl.'s Ex. A (Confidential); Pl.'s Ex.
16, Vol. 1, at 109 (Confidential).  Similarly, the Court lacks
jurisdiction over claim numbers 9456071 and 9997792 because they
involve vehicles in protest 0502-99-100003, and the vehicles were
repaired after January 12, 1999.[14]  See claim numbers 9456071 and
9997792, Pl.'s Ex. A (Confidential); Pl.'s Ex. 16, Vol. 3, at 27

---

[12]  See supra notes 2, 7 and accompanying text.

[13]  I.e., a loose cupholder in a vehicle with 36,000 miles,
and a loose ashtray in the same vehicle, which the dealer
ultimately characterized as "broken."

[14]  See supra note 8 and accompanying text.

(Confidential).  Likewise, the Court lacks jurisdiction over claim number 9380531 because it involves a vehicle in protest 0502-98-100041, and the vehicle was repaired after September 14, 1998.[15]  <u>See</u> claim number 9380531, Pl.'s Ex. A (Confidential); Pl.'s Ex. 16, Vol. 3, at 402 (Confidential).  Thus, disallowing these seven warranty expenses, the Court finds that SCUSA is entitled to an allowance in the amount of $[          ][16] for its warranty expenses documented with computer claim forms in Exhibit A.[17]

**B.    SCUSA Is Entitled to an Allowance for its Port Repair Expenses**

SCUSA's port repair expenses present a different situation entirely.  The port repair expenses correspond to repairs that were performed at the port of importation.  Pl.'s Mot. Summ. J.

---

[15]   <u>See</u> <u>id.</u>

[16]   To reach this sum, the Court simply totaled the dollar figures appearing in the fields "Parts Claimed" and "Labor Claimed" for the three computer claim forms at issue.  <u>See</u> Pl.'s Ex. A (Confidential).

[17]   As previously mentioned, SCUSA also provided five sample computer claim forms in Exhibit 21.  Pl.'s Ex. 21 (Confidential). Although Customs concedes that, based on the information found in these five computer claim forms, SCUSA has met its burden of establishing its entitlement to an allowance for these five warranty claims, the Court does not have jurisdiction over these five claims. Mem. Supp. Def.'s Cross-Mot. Summ. J. at 28.  All five of them relate to vehicles in entry 9814363-4 (an entry over which the Court lacks jurisdiction).  <u>See</u> Pl.'s Ex. 21 (Confidential); Pl.'s Ex. 16, Vol. 1, at 1 (Confidential); <u>supra</u> notes 2, 7 and accompanying text.  Accordingly, the Court is unable to grant an allowance to SCUSA for these five warranty expenses.

at 13-14. Given that these repairs were performed almost immediately after importation, the Court is not concerned, as it was with regard to SCUSA's warranty expenses, that the repairs might have been made to remedy damage resulting from intervening circumstances. Rather, with regard to the port repair expenses, the defects at issue almost certainly did exist at the time of importation since they were repaired at the port immediately after importation.

As a result, taking into account the unique nature of the repairs performed at the port, SCUSA has satisfied its burden of establishing that it is entitled to an allowance for its port repair expenses. First, as the Court previously ruled, SCUSA has shown that it contracted for "defect-free" merchandise. Saab Cars USA, Inc. v. United States, 27 CIT ___, Slip Op. 03-82 at 22 (July 14, 2003); Samsung, 23 CIT at 4, 35 F. Supp. 2d at 945.

Second, because SCUSA is able to correlate each port repair expense with a VIN, which in turn can be linked to a particular entry, SCUSA is able to relate its defective merchandise to specific entries. Pl.'s Ex. 15 (Confidential); Samsung, 23 CIT at 4-7, 35 F. Supp. 2d at 945-46. Customs objects that the defect descriptions provided by SCUSA for its port repair expenses in Exhibit 15 are just as deficient as those provided by SCUSA for its warranty expenses in Exhibit 16. Mem. Supp. Def.'s Cross-Mot. Summ. J. at 29. However, since the port repairs were

undertaken at the port almost immediately after importation (unlike the warranty repairs, which occurred several months – or even years – after the vehicles were sold), SCUSA is not required to provide defect descriptions with the same degree of specificity as those required for its warranty expenses. In other words, the same need does not arise for SCUSA to prove, by way of highly specific defect descriptions, that the defects existed at the time of importation. The Court is satisfied that, because the port repairs occurred both shortly after importation and at the port of importation, they were made to remedy defects in existence at the time of importation.

Finally, SCUSA is able to prove the amount of the allowance value for each entry. Samsung, 23 CIT at 4-7, 35 F. Supp. 2d at 945-46. The spreadsheet provided by SCUSA in Exhibit 15 lists the total amount paid for each port repair expense. Pl.'s Ex. 15 (Confidential). After subtracting the amount paid for port repair expenses over which the Court lacks jurisdiction,[18] the Court finds that SCUSA is entitled to an allowance in the amount of $[        ][19] for its port repair expenses.

---

[18]  See supra notes 2, 7 and accompanying text.

[19]  Also subtracted from this total is the amount SCUSA paid for repairs to [          ] vehicles since the [    ] responsible for the damage occurred after importation. See supra note 4.

### IV.  CONCLUSION

For the aforementioned reasons, the Court finds that SCUSA is entitled to an allowance in the amount of $[          ] for its warranty expenses and $[          ] for its port repair expenses.

Judgment will be entered accordingly.


                              /s/ Richard W. Goldberg
                              **Richard W. Goldberg**
                              **Senior Judge**



**Date:        January 6, 2004**
**             New York, New York**